# Richmond

JOHN CAPERS v. JESSIE MAE WHITE, ADMINISTRATRIX OF THE ESTATE OF MARION R. CAPERS, DECEASED.

May 3, 1954.

Record No. 4201.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*William A. Redfern, Jr.* and *W. L. Devany, Jr.* for the plaintiff in error.

*William Clark Coulbourn,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Appellant, John Capers, instituted this proceeding in the Circuit Court of Mathews County, Virginia, against Jessie Mae White, administratrix of the estate of Marion R. Capers, seeking to recover the proceeds of a policy of life insurance issued by the John Hancock Mutual Life Insurance Company on the life of his father, the late Marion R. Capers. The administratrix denied that she was indebted to the plaintiff in any sum whatever, and averred that Alice Capers was entitled to the proceeds of the policy under the last will and testament of Marion R. Capers, her son.

The parties waived trial by jury, and the case was submitted to the court upon the pleadings and the following agreed statement of facts:

"On October 5, 1951, Marion R. Capers, a seaman, lost his life when the steamship Southern Isles, on which he was employed, was broken up and sank in a storm at sea. At and previous to the time of his death he had been residing with his widowed mother, Alice Capers, in Daytona Beach, Florida. His mother had no income and was dependent upon him for support. He left a will, dated December 11, 1948, which contained the following provisions:

" 'I give, devise and bequeath to my mother, Alice Capers, all property which I shall own at the time of my death.

" 'I nominate, constitute and appoint my mother, Alice Capers, the executor of this will and direct that she not be required to give bond as such executor.'

"On November 28, 1951, the said will was duly admitted to probate in the Court of the County Judge of Volusia County, Florida, and letters testamentary were issued to Alice Capers. Subsequently, on March 19, 1952, it having been discovered that the deceased had left personal property in Virginia, a copy of the will was admitted to probate in the Circuit Court of Mathews County and Jessie Mae White, the defendant, was appointed as ancillary administratrix after giving bond, with suitable surety, in the penalty of $6000.00.

"Marion R. Capers, the deceased, also left surviving him a son by a divorced wife, John Capers, the plaintiff in this action. At the time of his father's death John Capers was over twenty-one years of age and was residing in Portsmouth, Virginia, where he was also employed. It is not alleged or contended that he was in any manner dependent upon his father or that, on the other hand, he ever gave any financial assistance to his father. It is agreed, as a matter of fact, that after the separation of his mother and father and up to the time when he became twenty-one years old, his father, under a court order, regularly contributed $50.00 per month to his support.

"At and for some years prior to the date of his death, Marion R. Capers was insured in the sum of $5000.00 under a group life insurance policy issued by the John Hancock Mutual Life Insurance Company to the Masters, Mates and Pilots Association, a New York labor union of which Capers was a member. The premiums on the policy were paid by the Trustees of the Association from funds contributed by the employees. It is agreed that Capers never named a beneficiary to whom the insurance should be payable.

"Some time after his father's death John Capers instituted an action against the John Hancock Mutual Life Insurance Company in the Circuit Court of Mathews County, Virginia, claiming that, as the sole heir of his father and under

the provisions of the policy contract, he was entitled to the proceeds of the policy. The insurance company had the action removed to the United States District Court, paid the proceeds of the policy into the registry of the court, and interpleaded Alice Capers, Executrix, and Jessie Mae White, Administratrix. The insurance company was then dismissed from the case, its attorneys being allowed counsel fees of $250.00 and expenses of $65.58 from the funds deposited. The executrix and the administratrix thereupon made a motion for summary judgment in their favor, which motion the court sustained, directing that the balance of $4684.42 remaining from the funds deposited be paid to Jessie Mae White, Administratrix, in her representative capacity.

"The District Court, in its written opinion on the motion, expressly refrained from passing upon the question of the ultimate ownership, as between John Capers, the son, and Alice Capers, the mother, of the funds turned over to the administratrix.

"John Capers has now brought an action against the administratrix, claiming that he is entitled to the proceeds of the policy 'by virtue of his being the sole surviving heir of the said Marion R. Capers, and by reason of the said (insurance) contract.'

"It is agreed that the master policy issued by the John Hancock Mutual Life Insurance Company to the Masters, Mates and Pilots Association, being a New York contract, must be construed under the law of the State of New York. The decision in this case turns upon the construction, under the said law, of the following provision of the policy:

" 'BENEFICIARY * * *

" 'In the event of the death of the beneficiary or beneficiaries last named by the employee prior to that of the employee, or if no beneficiary shall have been named, the Life Insurance or the commuted value of any remaining installments thereof payable as herein provided, as the case may be, shall be paid to the executors or administrators of

the employee, except that the Company may in such case, at its option, pay such insurance to such employee's wife or husband if living; if not living, to the children of such employee, equally; if none survive, to either the father or mother of such employee or to both equally if both survive.' "

The trial court, in a written opinion, held that the plaintiff was not entitled to recover, and thereupon entered an order dismissing the cause from the docket.

Appellant, in his brief and argument before us, concedes that a testator has the right, under the laws of Florida, to dispose of the proceeds of a policy of insurance on his life by will. He claims, however, that he is entitled to the proceeds here involved under the terms of the policy contract and the laws of Florida. He contends that since the bequest to Alice Capers does not specifically refer to the insurance policy, there is nothing to indicate that his father intended thereby to give its proceeds to her.

The determination of the questions raised involves a consideration of the beneficiary provisions of the policy above quoted, under the laws of the State of New York, where the contract was entered into, and a construction of testator's will, under the laws of the State of Florida, the domicile of testator at the time of his death. *Seaton* v. *Seaton*, 184 Va. 180, 183, 34 S. E. (2d) 236.

Many of the States, including Virginia, (Code of Virginia, 1950, § 38.1-471 to 482, inclusive) have enacted statutes relating to group life insurance contracts. Such contracts frequently contain a provision similar to the one under review, commonly known as the "facility of payment clause." They have been before the courts many times for interpretation. New elements are necessarily introduced in connection with their use. The new factors presented often contain provisions prescribed or limited by statutes, relating to the designation of beneficiaries and exemption of proceeds from legal process, and consequently they are construed according to their terms as thus prescribed or limited. Otherwise, the ordinary principles of personal insurance apply to the

construction of these contracts. Appleman, Insurance Law and Practice, Vol. 1, § 41.

█ The purpose of the facility of payment clause is to aid and protect a certain class of people, to permit the prompt payment of the policy, and to remove the delay and cost of litigation among claimants. "It is 'an appointment both by the assured and the beneficiary of persons any of whom are authorized to receive payment of a sum agreed to be paid * * * with the certainty that the validity of the payment by the company could not be thereafter questioned.'" *Fulcher* v. *Parker*, 169 Va. 479, 484, 194 S. E. 714. It "neither grants nor takes away a cause of action from any person." *Howell* v. *John Hancock Mutual Life Insurance Co.*, 286 N. Y. 179, 184, 36 N. E. (2d) 102.

█ In the policy under review, no beneficiary was named. If the first sentence in the beneficiary provision, above quoted, had ended with the words "shall be paid to the executors or administrators of the employee," the proceeds of the policy would have been payable only to the executor or administrator of the insured, unless such payment was prohibited by law or public policy. However, the added clause, the "facility of payment clause," gave the insurer the option to pay the insurance to such of the described relatives of the insured as it might select to receive payment. This clause is in accord with the following provision of Section 161.1(d) of the Insurance Law of the State of New York, relating to provisions in group life insurance policies delivered or issued for delivery in that State:

"Section 161.1(d) * * * The benefits payable under any such policy shall be payable to the beneficiary or beneficiaries designated by the insured, but if there is no designated beneficiary as to all or any part of the insurance at the death of the insured, then the amount of insurance for which there is no designated beneficiary shall be payable to the estate of the insured, except that the policy may provide that the insurer may in such case, at its option, pay such in-

surance to any one or more of the following surviving relatives; wife, husband, mother, father, child or children, brothers or sisters; and except that the policy may provide that the insurer may, in any case, deduct from the aggregate sum payable under all certificates on the life of one such insured issued under such policy, an amount not to exceed five hundred dollars to be paid to any person or persons appearing to the insurer to be equitably entitled to same by reason of having incurred expenses on behalf of the insured or for his or her burial. Payment in accordance with any of the foregoing provisions shall completely discharge the insurer's liability with respect to the amount of insurance so paid."

In an exhaustive annotation on the facility of payment clause, the following statement is made in 166 A. L. R., at page 29:

"Since an insurer has an option as to whether payment shall be made under the facility of payment clause, and a right to elect the person who is thus to receive payment, and since a facility of payment clause does not grant a cause of action to any person, the general rule is that an insurer is not bound to and cannot be compelled to exercise its option and right of election under a facility of payment clause, and that a person, merely and solely by virtue of his eligibility for payment under such clause, has no right to maintain an action to compel the insurer to make such payment to him."

This statement is supported by citations from many jurisdictions, including the following New York cases. *McCarthy* v. *Prudential Insurance Co.*, 252 N. Y. 459, 169 N. E. 645; *Nolan* v. *Prudential Insurance Co.*, 139 App. Div. 166, 123 N. Y. S. 688.

In the above annotation this further statement is made on page 32:

"* * *; if the insurer does not exercise its option to make payment under the facility of payment clause, the right to the proceeds of the policy and to enforce the payment

thereof is to be determined as though the policy contained no facility of payment clause."

Authorities cited in support from many jurisdictions include the following New York cases: *Re: O'Neill*, 143 Misc. 69, 255 N. Y. S. 767; *Tarasowski* v. *Prudential Insurance Co.*, 113 Misc. 248, 184 N. Y. S. 264; *Re: Kozusko*, 177 Misc. 530, 31 N. Y. S. (2d) 61.

In *McCarthy* v. *Prudential Insurance Co.*, *supra*, where an action was brought by an optional payee, the court said in 252 N. Y., at page 463:

"* * * The company agrees to pay to the executors or administrators of the insured *unless* payment be made under the 'Facility of Payment' clause. The claim belonged to the estate. It was a contingent claim, however, subject to the right or privilege of the company to pay to any relative. This privilege, however, belonged to the company and was not a right of the relative. If this were not so, which relative could sue on the claim? There might be twenty relatives, any one of which under this clause the company could pay."

In *Ferretti* v. *Prudential Insurance Co.*, 49 Misc. 489, 490, 97 N. Y. S. 1007, 1007, an action brought by an optional payee under a facility of payment clause, the following was said:

"It will thus be seen that the persons primarily entitled to payment are the personal representatives or assigns of the deceased policyholder, with the option to the company, however, to make payment to others under certain circumstances. The provision for payment to persons other than the executors, administrators or assigns, being wholly optional with the company, creates no legal liability on the part of the company toward those others, and merely provides a defense to the company against the claims of the executors, administrators and assigns if, but not unless, it has elected to make payment to the other persons named in the article second." [Article second refers to a facility of payment clause.]

In *Re: O'Neill, supra,* the court reviewed and summarized all of its previous decisions on the facility of payment clause, and said:

"The designation popularly given this clause aptly describes the legal results which have been attached to it. As is said in *Ferretti* v. *Prudential Insurance Company of America,* 49 Misc. Rep. 489, at page 490, 97 N. Y. S. 1007: 'The provision for the payment to persons other than the executors, administrators or assigns, being wholly optional with the company, creates no legal liability on the part of the company toward these others, and merely provides a defense to the company against the claims of the executors, administrators and assigns if, but not unless, it has elected to make payment to the other persons named * * *.'

"In accordance with this principle, it has been held with great uniformity that, if the company has failed or refused to exercise its right of election thus given, the only persons who can recover from it are those expressly described in the policy either by name or in a representative capacity." 255 N. Y. S. at pages 772, 773.

In *New York Life Insurance Co.* v. *Valz,* 141 F. (2d) 1014, 1015, the court, construing the provisions of an insurance policy under the laws of Florida, said:

"The insured had the power, under the Florida statute, to dispose by will of the proceeds of those of his insurance policies which were payable to his executors, administrators or assigns in like manner as he could have any other similar property or effects.

"It cannot be doubted that the insured could have made the trustees for his wife and children the specific beneficiaries or definite assignees in the policies. Sec. 222.13, Florida Statutes 1941, F. S. A. It cannot be doubted that even if he had not made a will the proceeds of the policies would have inured exclusively to the benefit of his wife and children. Sec. 222.13, Florida Statutes 1941, F. S. A. It is not open to dispute under the statutes and decisions of Florida that the proceeds of such policies are in no

case liable for any debts of the insured unless there was a specific declaration that the policy was for the benefit of creditors."

" 'Under the statute as amended in 1903, the proceeds of the insurance may be bequeathed by the insured, when payable as here, * * *. *Milam* v. *Davis*, 97 Fla. 916, 123 So. 668, on petition for rehearing, page 687, text, 691.'

" '* * * and that the statutory exemption of life insurance proceeds from the claims of creditors is intended to remain effective, though the statutory right to bequeath be exercised, and the property passes by will and not by statute, * * *. Id., 123 So. text 687.' "

In Virginia, we have adhered to the New York rule. *Fulcher* v. *Parker, supra.*

In the present case, the insurance company not only failed and refused to exercise its option; but it waived its right to make payment under facility of payment clause by voluntarily paying the proceeds of the policy into court, and requesting to be dismissed from the case. The option given it was permissive and not mandatory. It was wholly within its rights in declining and refusing to exercise its option.

Both New York (Section 166, Insurance Law of the State of New York) and Florida (Section 222.13, Florida Statutes, 1941, F. S. A.) have enacted so called "exemption statutes" for the purpose of exempting the proceeds of certain life insurance policies from legal process and from the debt or liability of the insured or his beneficiary, whether payable to a named beneficiary, or to the estate of the insured, unless it is declared in such policies that the insurance is effected for the benefit of the creditors of the estate of the insured. In Virginia, we have also such a statute, Code, 1950, § 38.1-482.*

---

*"No policy of group life insurance, nor the proceeds thereof, shall be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law, to pay any debt or liability of any employee insured thereunder, or his beneficiary, or any other person who may have a right thereunder, either before or after payment; nor shall the proceeds thereof, when not made payable to a named beneficiary, constitute a part of the estate of the employee for the payment of his debts."

Section 222.13 Florida Statutes, 1941, F. S. A., reads as follows:

"Life insurance policies; disposition of proceeds.—Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the child or children and husband or wife of such person in equal portions, or to any person for whose use and benefit such insurance is declared in the policy; and the proceeds thereof shall in no case be liable to attachment, garnishment or any legal process in favor of any creditor of the person whose life is so insured, unless the insurance policy declares that the policy was effected for the benefit of such creditor; *provided, however, that whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any person whatsoever or for any uses in like manner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament.*" (Italics supplied.)

The facility of payment clause having here been effectively eliminated from the policy by the insurance company's waiver of its right to make payment thereunder, the policy must be considered as if it had never contained such a clause. Section 161 of the Insurance Law of the State of New York recognizes the right of the insured to have the policy proceeds paid to the estate of the insured when no beneficiary is designated. It does not entitle the heirs of insured to compel payment to them when the insured has otherwise made legal disposition of his estate.

We come next to the question whether the proceeds of the policy, being a disposal part of the insured's estate, passed under his will to Alice Capers. The testator was a resident of the State of Florida, and his will was made and admitted to probate in that State.

By a general devise and bequest, he gave to his mother "all property which I shall own at the time of my death." There was no residuary clause nor necessity therefor. Testator gave everything he owned to his mother. The word "all" is most comprehensive. It means the whole of; every part, parcel and individual component of the whole, hence the whole of his possessions. It included all of the property or interest in property which he owned. Nowhere in the policy contract or in the will is there any clause or provision which gives to the appellant a legal claim.

In *Milam, et al.* v. *Davis, et al.*, 97 Fla. 916, 123 So. 668, the history of the pertinent Florida statute (Section 222.13) is reviewed at length and the statute construed. The court there held that the proceeds from a policy of life insurance payable to insured's estate was part of the insured's property in which his wife acquired a dower right that could not be divested by will, and that the distribution of the proceeds was governed by the law of Florida, the domicile of the insured.

Furthermore, Section 222.13 of the Florida Statutes shows a statutory recognition not only that the insured has a property interest in life insurance proceeds payable, as in this case; but that when such proceeds are bequeathed they pass by the will and not by statute. This is made clear by the proviso in the last portion of the statute which empowers the insured whenever the insurance is for the benefit of his estate "or is payable to the estate or to the insured, his executors, administrators or assigns," to bequeath the proceeds of such insurance "to any person whatsoever or for any uses in like manner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament."

In *Milam, et al.* v. *Davis, et al.*, *supra*, we are told that the above statute, in force since 1872, was amended in 1897 and again in 1903 to correct the inequitable situation where children of the insured were grown and self-supporting, and his widow penniless, so as to enable the insured to dis-

pose of his insurance by will to those whom he thought most deserving and in need of his bounty.

In *Sloan* v. *Sloan*, 73 Fla. 345, 74 So. 407, it appeared that Joseph B. Sloan had a policy on his life made payable to Joseph B. Sloan, his executors, administrators or assigns. He died testate, and the will contained the following clause:

"I give and bequeath a one-third interest in all of my other personal property to my wife and the remaining two-thirds to be divided, * * * ."

There was no mention of insurance policies in the will. The court, after quoting Section 222.13 of the Florida Statutes, at pages 349, 350, 73 Fla., said:

"Under the statute above quoted an insurance policy so made payable may be bequeathed by the insured to any person or persons whatsoever or for any uses in like manner as he or she may bequeath or devise any other property or effects of which he or she may be possessed.

"If such insurance policy may be bequeathed by the insured in like manner as he may bequeath any other property or effects, it may be included in a general residuary bequest of personalty and in this case was included in the bequest of the insured of 'all my other personal property' made in the third subdivision of his will."

Appellant relies upon the case of *Lowe* v. *Lowe*, 142 Fla. 266, 194 So. 615, as adopting a contrary view. The facts in that case may be readily distinguished from those in *Sloan* v. *Sloan*, *supra*, and in the case before us. Under the circumstances in *Lowe* v. *Lowe*, *supra*, it was held that: "Since no distribution was made of the insurance policies as provided in the proviso of the quoted statute," (Section 222.13) the proceeds of the policies "passed to the surviving heirs of the testator under the first part of said statute." The court then significantly said: "This holding is not intended to overrule *Sloan* v. *Sloan*, 73 Fla. 345, 74 So. 407; the controlling facts being different in the two cases." 142 Fla. at page 268.

In a later case, *In Re: Seaton's Estate*, 154 Fla. 446, 449, 18 So. (2d) 20, the rule stated in *Sloan* v. *Sloan, supra,* was reaffirmed in the following language:

"The rule of *Sloan* v. *Sloan, supra,* is in full force, therefore, in cases where it applies, and is the settled construction of the court on the statute involved."

We agree with the judge of the trial court that appellant does not come within the definition of a "third person beneficiary" under Section 166 of the Insurance Law of the State of New York. He is not designated in the policy or the will as a beneficiary. He was not elected by the insurance company as one of the optional payees to receive any of the proceeds. He has no claim upon the proceeds of the policy as against the wishes of the testator. Here the benefits payable under the policy in accordance with the statute did not inure to him because they were otherwise disposed of by testator's will.

The only purpose of Section 166, as appears from its title, "Exemption of proceeds and avails of certain insurance and annuity contracts," is to exempt proceeds from life insurance contracts payable to a beneficiary entitled to the funds from the claims of creditors.

The proceeds here were paid to the administratrix, by court order, to be held not as a part of the general estate of the testator but as a part of his estate subject to a determination of the question of their ultimate ownership. They are not a part of the estate of the insured for the payment of his debts. The personal representative, as such, has no interest in the funds. If he receives them, as in the case at bar, he holds them for the benefit of those who are ultimately entitled thereto. *Fulcher* v. *Parker, supra,* 169 Va. at page 484.

We conclude that the proceeds of testator's life insurance policy are a part of his estate; that their character, as such, was not affected by the so-called exemption statutes of New York and Florida, nor by the facility of payment clause

contained in the policy; and that as a part of his estate, they passed under the last will and testament of Marion R. Capers to Alice Capers.

We find no error in the judgment complained of, and it will be affirmed.

*Affirmed.*